## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

## PARKERSBURG

**DAVID RAY BRANNON,**

      **Plaintiff,**

**v.**                                          **CASE NO. 6:11-cv-00320**

**MICHAEL J. ASTRUE,**
**Commissioner of Social Security,**

      **Defendant.**

## PROPOSED FINDINGS AND RECOMMENDATION

This is an action seeking review of the final decision of the Commissioner of Social Security denying the plaintiff's application for disability insurance benefits ("DIB") and supplemental security income ("SSI"), under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f.  By standing order, this case was referred to this United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendation for disposition, all pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiff, David Ray Brannon (hereinafter referred to as "Claimant"), filed applications for SSI and DIB on December 21, 2006, alleging disability as of April 1, 2006, due to back problems/pain and high cholesterol.  (Tr. at 14, 106-09, 110-14, 139-46, 159-63, 167-71.)  The claims were denied initially and upon reconsideration.  (Tr. at 14, 52-56, 57-61, 65-67, 68-70.)   On April 30, 2007, Claimant requested a hearing before an Administrative Law Judge ("ALJ").  (Tr. at 71.)  A video hearing was held on December 1,

2008, before the Honorable Theodore Burock.  (Tr. at 24-47, 78-82, 83-87.)  By decision dated May 20, 2009, the ALJ determined that Claimant was not entitled to benefits.  (Tr. at 14-23.)  The ALJ's decision became the final decision of the Commissioner on March 16, 2011, when the Appeals Council denied Claimant's request for review.  (Tr. at 1-5.)  On May 9, 2011, Claimant brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g).

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability.  See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972).  A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ."  42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims.  20 C.F.R. §§ 404.1520, 416.920 (2002).  If an individual is found "not disabled" at any step, further inquiry is unnecessary.  Id. §§ 404.1520(a), 416.920(a).  The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment.  Id. §§ 404.1520(b), 416.920(b).  If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment.  Id. §§ 404.1520(c), 416.920(c).  If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4.  Id. §§ 404.1520(d), 416.920(d).  If it does, the claimant is found disabled and awarded benefits.  Id.  If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work.  Id. §§ 404.1520(e), 416.920(e).  By satisfying inquiry four, the claimant establishes a prima facie

2

case of disability.  Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).  The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience.  20 C.F.R. §§ 404.1520(f), 416.920(f) (2002).  The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

In this particular case, the ALJ determined that Claimant satisfied the first inquiry because he has not engaged in substantial gainful activity since the alleged onset date.  (Tr. at 16.)  Under the second inquiry, the ALJ found that Claimant suffers from the severe impairments of a back impairment and a hearing impairment.  (Tr. at 16-18.)  At the third inquiry, the ALJ concluded that Claimant's impairments do not meet or equal the level of severity of any listing in Appendix 1.  (Tr. at 18.)  The ALJ then found that Claimant has a residual functional capacity for medium work, reduced by nonexertional limitations.  (Tr. at 18-21.)  As a result, Claimant cannot return to his past relevant work.  (Tr. at 22.)  Nevertheless, the ALJ concluded that Claimant could perform jobs such as dishwasher and sales representative in the heating and air conditioning industry, which exist in significant numbers in the national economy.  (Tr. at 22-23.)  On this basis, benefits were denied.  (Tr. at 23.)

Scope of Review

The sole issue before this court is whether the final decision of the Commissioner

3

denying the claim is supported by substantial evidence.   In <u>Blalock v. Richardson</u>, substantial evidence was defined as

> "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'"

<u>Blalock v. Richardson</u>, 483 F.2d 773, 776 (4th Cir. 1972) (quoting <u>Laws v. Celebrezze</u>, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the court, is charged with resolving conflicts in the evidence.   <u>Hays v. Sullivan</u>, 907 F.2d 1453, 1456 (4th Cir. 1990).   Nevertheless, the courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." <u>Oppenheim v. Finch</u>, 495 F.2d 396, 397 (4th Cir. 1974).

A careful review of the record reveals the decision of the Commissioner is not supported by substantial evidence.

<u>Claimant's Background</u>

Claimant was fifty-nine years old at the time of the administrative hearing.  (Tr. at 29.)  He has a high school education and an associate degree in Electronic Engineering. (Tr. at 30-31, 38.)  In the past, he worked as an electronics repairman and as a heating and air-conditioning salesman, installer, and repairman.  (Tr. at 38.)

<u>The Medical Record</u>

The court has reviewed all evidence of record and will address those portions which relate to the arguments raised.

Claimant's Challenges to the Commissioner's Decision

      Claimant asserts that the Commissioner's decision is not supported by substantial evidence because the ALJ failed to give adequate weight to the opinion of Claimant's treating physician, Ronald C. Michels, M.D.  (Tr. at 2-5.)  Specifically, Claimant argues:

> The claimant's treating physician since June 2007 was Ronald C. Michels, M.D., a staff physician at the Parkersburg, West Virginia Veterans Administration Medical Center (VAMC).  *See Ex.* 11F.  The client has been evaluated by MRI, received injections, undergone physical therapy, used a TENS unit, and been prescribed narcotic pain medications by the VAMC.  *See Ex.* 8F-11F.  As the claimant's treating physician, Dr. Michels has reviewed, overseen, referred, and prescribed the vast majority of treatment methods given to the claimant during the relevant time period.  He is familiar with the claimant's relevant clinical and laboratory diagnostic techniques, including MRI's, and has listened to the claimant's subjective complaints throughout their treating relationship.
>
> Dr. Michels completed a Medical Source Statement of Ability to do Work-Related Activities (Physical) for purposes of the claimant's application for benefits.  *See Ex.* 8F.  The ALJ failed to give weight to Dr. Michels's opinion, stating that "[l]imitations of the severity alleged are not supported...by any medical findings cited in the MSS or by the longitudinal record of follow-up at VA facilities..."  *Id.*  The ALJ not only erred in failing to give controlling weight to the opinion of Dr. Michels, but he also erred in failing to properly evaluate and weight Dr. Michels's opinions according to the regulations and relevant case law...
>
> The objective medical findings in the claimant's records support Dr. Michels's opinion.  MRI reports show a central protrusion type herniation at the L3-L4 and L4-L5 level impressing on the ventral thecal sac as well as neural foramina bilaterally narrowed with minimal contact of the disc with the existing L5 nerve root on the left.  *See Ex.* 8F at 48.  The claimant has been treated with narcotic pain medication, physical therapy, chiropractic services, epidural steroid injections, a TENS unit, and a neurosurgical consult that explained after exhausting all other options, he would recommend a diskogram at all levels of the claimant's lumbar spine.  *See Ex.* 8F-10F.  In addition, the claimant complains of chronic, constant back pain aggravated by weight-bearing or any type of movement involving the back, such as bending over.  *See* ALJ Hearing Decision page 6.  The

claimant testified that he has problems sitting, but that he can sit better than he can stand.  *Id.*  Both the medical evidence of record as well as the claimant's testimony is consistent with Dr. Michels's Medical Source Statement.  The ALJ instead gave controlling weight to the opinions of outdated State agency medical consultants who did not have access to the entire record and did not examine the claimant.  *See* ALJ Hearing Decision (citing Ex. 2F and 3F).  Thus, the ALJ erred in failing to give adequate and controlling weight to the claimant's treating physician, Dr. Michels.

Moreover, the ALJ did not give adequate reasons for rejecting Dr. Michels's opinion evidence.  The ALJ was obligated to evaluate and weigh medical opinions "pursuant to the following non-exclusive list: (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist."  *Hines v. Barnhart*, 453 F.3d 559, 563 (*citing Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005)).*  However, here the ALJ simply erroneously stated that "[l]imitations of the severity alleged are not supported...by any medical findings cited in the MSS or by the longitudinal record of follow-up at VA facilities..."  *See* ALJ Hearing Decision at 7.  He failed to cite any such records that do not support Dr. Michels's opinion, and he failed to explain the vast relationship that existed between the claimant and Dr. Michels.  Thus, he did not follow the relevant case law that requires an ALJ to evaluate certain aspects of a treating source's opinion evidence thoroughly.

(Pl.'s Br. at 2-4.)  In short, Claimant argues that the ALJ's decision that Claimant is capable of work at the medium exertional level, *e.g.*, as a dishwasher, is not supported by substantial evidence when Claimant's treating physician opined that he is limited to the sedentary exertional level, and the ALJ's decision is based on non-examining physicians.

The Commissioner's Response

The Commissioner asserts that the ALJ's analysis of Dr. Michels's assessment is supported by substantial evidence.  (Def.'s Br. at 11-16.)  Specifically, the Commissioner argues:

[T]he ALJ adequately weighed Dr. Michels' assessment, and properly granted

it little weight because the assessment was not supported by the evidence of recorder, including Dr. Michels' own treatment notes, the VA treatment notes, or Plaintiff's activities...

Dr. Michels' extreme limitations are not supported by his own treatment records. As the ALJ noted, a treating source's opinion is evaluated and weighed under the same standards applied to all other medical opinions, taking into account factors including the opinion's supportability, consistency, and the physician's specialization. 20 C.F.R. §§ 404.1527(d); 416.927(d). The ALJ has discretion to review the record and choose among conflicting testimony...In this case, as pointed out by the ALJ, Dr. Michels did not start treating Plaintiff until June 2007, more than a year after his alleged disability onset date (Tr. 20, 347-48). In fact, Plaintiff testified that he only treated with Dr. Michels once or twice a year (Tr. 36)...

Further, even when Dr. Michels' did treat the Plaintiff, he consistently noted normal clinical findings...Significantly, Dr. Michels' November 2008 assessment did not state that it related back to an earlier time period (Tr. 394-97). In addition, within the medical source statement, Dr. Michels cited no diagnostic or laboratory techniques that supported his extreme assessments (Tr. 394-97). In fact, he left the majority of the spaces blank where the form asked for "medical findings" that supported the assessed limitations (Tr. 394-97)...

Moreover, and as the ALJ pointed out, Dr. Michels' November 2008 assessment is not supported by the longitudinal medical evidence of record (Tr. 20)...

The state agency physicians' assessments also do not support Dr. Michels' extreme assessments. Drs. Franyutti and Osborne, who are highly qualified in social security disability evaluation, both assessed that Plaintiff could perform medium exertional work (Tr. 204-10, 212-18). Further, they both noted that Plaintiff was only partially credible given the medical findings of record (Tr. 208, 210, 218). In fact, the ALJ gave Plaintiff the benefit of the doubt and found Plaintiff "somewhat more limited" in performing activities and tolerating some environmental factors than the state agency physicians' assessments (Tr. 21).

Plaintiff's activities also do not support Dr. Michels' extreme limitations...

Lastly, the ALJ did not have to accept Dr. Michels' assessment as Plaintiff's RFC. In fact, Plaintiff's RFC is an issue that is specifically reserved to the Commissioner. 20 C.F.R. §§ 404.1527(e); 416.927(e).

(Def.'s Br. at 11-15.)

Relevant Medical Evidence

Records indicate Claimant was treated at the Veteran's Administration Medical Center (VAMC) from February 14, 2005 through August 26, 2008 on approximately forty-two occasions.  (Tr. at 219-92, 296-359, 360-77.)  A treatment note from VAMC dated September 15, 2005 states:

> PROBLEM: lumbar spine condition
> DATE OF ONSET: 1967
> CIRCUMSTANCES AND INITIAL MANIFESTATIONS: The veteran says he injured his back in the navy.  He says he was on a ladder (steep stairs) reaching overhead and getting a carton of milk from someone and then turning and lowering it down to someone below him.  He says his back started hurting and he went to sick call.  He ways he was treated for his back for 1 week.  He is not able to recall the details of this treatment.  He says he has had back problems ever since that time.  He says he has been going to a chiropractor since the early 1980's.  I have no records available from a chiropractor
> COURSE SINCE ONSET: Progressively worse
> CURRENT TREATMENTS: Medical
> CURRENT TREATMENT SUMMARY: [N]aproxen 250 mg twice a day
> RESPONSE TO TREATMENT: Fair...
> BACK SYMPTOM FLAREUPS: Yes
> AVERAGE DURATION: 1 day
> USUAL FREQUENCY: Weekly
> USUAL SEVERITY: Severe
> VETERAN"S IMPRESSION OF THE EXTENT OF ANY ADDITIONAL LIMITATION OF MOTION OR OTHER FUNCTIONAL IMPAIRMENTS DURING FLAREUP: I keep on going.  I have to earn a living
> PRECIPITATING/AGGRAVATING FACTORS: Overexertion, Sitting, Walking, especially uphill, Bending, Twisting
> ALLEVIATING FACTORS: None

(Tr. at 240-41.)

On June 2, 2006, Claimant had an image study report of his lumbar spine read by Mabel L. Wright, PA-C [physician's assistant - certified], VAMC (co-signed by Promada K. Kevabhaktuni, Staff Physician, 06/05/2006):

There is degenerative disc disease with narrowing of the disc interspace at L4-L5 and L5-S1, more advanced at L5-S1. There is vacuum phenomenon noted at L5-S1 and a slight retrolisthesis at that level, secondary to degenerative change. Incidental note is made of minimal atherosclerotic disease in the abdominal aorta.

Impression: Degenerative disc disease and degenerative retrolisthesis as described above...

MEDICAL OPINION: DDD [degenerative disc disease] of the lumbar spine is less likely as not (less than 50/50 probability caused by or a result of inservice back strain...

RATIONALE FOR OPINION: The veteran was seen and treated 1 time for a thoracic strain. There is no medical literature to support a claim that a thoracic strain causes DDD of the lumbar spine.

(Tr. at 246-47, 266-67, 287-88.)

On September 11, 2006, Stephen J. Cromwell, PA-C, VAMC, reported:

HISTORY: This 57 YOM [year-old male] comes in unsched [unscheduled] with hx [history] of chronic lbp [low back pain] and is here today with c/o [complaints of] worsening of his pain this past week. Denies any injury or strain yet this complicates his work as a custodian. He did do heating and cooling work but had to quit this due to his back. Present pain will transmit to the l [low] mid thigh at times. No bowel or bladder dysfunction...

DIAGNOSTIC IMPRESSION: LS [lumbar spine] strain

PLAN/TREATMENT: LORTAB 5/500mg #40...FLEXERIL 10mg...REST WITH FEET UP FOR 3-4 DAYS.

(Tr. at 255-56.)

On January 4, 2007, Frank M. Nuzum, paramedic, stated that Claimant was admitted to the VAMC emergency department with complaints of "low back pain X 3 days which radiates into left hip. No recent/prior trauma related events. (Tr. at 252, 357-58.)

On January 4, 2007, Stephen J. Cromwell, PA-C, VAMC, stated:

9

> CHIEF COMPLAINT: C/O [complaints of] LBP [low back pain].
> HISTORY: This 57 yom [year old male] comes in unsched [unscheduled] with hx [history] chronic, recurring LBP and is here today with c/o exacerbation of his back pain X 3 days.  Transmits to the L [left] hip.  Denies bowel or bladder problems with this.  He states that he is having more bouts of this acute pain in the past 1-2 years and has numbness down the L leg to the foot at times. He has a persistent aching in the low back...
>
> DIAGNOSTIC IMPRESSION: Acute and chronic LBP
> PLAN/TREATMENT: Percocet5 #30 1Q6H PRN Severe pain — Lortabs not effective for him.  Robaxin 750mg Q6H PRN; Sched [schedule] MRI of LSS [lumbar spine stenosis]...

(Tr. at 250, 355-56.)

On February 16, 2007, a non-examining State agency medical source provided a Physical Residual Functional Capacity [RFC] Assessment form and opined that Claimant could perform medium work; perform all postural movements frequently with the exception that climbing ladder/robe/scaffolds and crawling could be performed occasionally; no manipulative, visual, or communicative limitations were established; and environmental actions were unlimited except that Claimant should avoid concentrated exposure to extreme temperatures and hazards.  (Tr. at 203-7.)  The evaluator, Fulvio Franyutti, M.D. concluded: "Clmt [claimant] credibility is suspect given MER [medical evidence of record].  Function Report has not been returned.  Recommended onset date needed." (Tr. at 210.)

On March 14, 2007, another non-examining State agency medical source provided a RFC Assessment form and opined that Claimant could perform medium work and no manipulative, visual, communicative or environmental limitations were established.  (Tr. at 211-15.)  The evaluator, Cindy Osborne, D.O. concluded: "Claimant is partially credible. Findings do not support degree of allegations.  Decrease RFC to medium." (Tr. at 218.)

On April 23, 2007, Claimant had a Magnetic Resonance Imaging [MRI] of his lumbar spine without contrast read by David Fore, M.D., Contract Radiologist, VAMC, who reported:

> MRI evaluation of the lumbar spine including sagittal and axial T1, sagittal and axial T2 and coronal inversion recovery sequences is compared to a lumbar spine series dated 06/02/2006.
>
> There is redemonstration of degenerative disc disease at the lumbosacral junction with decreased intervertebral disc height and diminished disc signal intensity. The a grade 1 retrolisthesis of the L4 on L5 is noted. There is no vertical compression or spondylolysis. Intervertebral disc height is mildly diminished at the L3-L4 level but is preserved elsewhere.
>
> There is a central protrusion type herniation at the L3-L4 level impressing on the ventral thecal sac without significant central canal stenosis. Increased T2 signal intensity within this disc protrusion suggest a small tear of the annulus fibrosis.
>
> There is a disc bulge at the L4-L5 level impressing on the ventral thecal sac without significant central canal stenosis. The neural foramina bilaterally are mildly narrowed and there may be minimal contact of the disc with the exiting L5 nerve root on the left. There is also minimal increased signal intensity centrally within the disc posteriorly that could represent a some herniation of nucleus pulposus into the annulus fibrosis at this level. There is mild facet arthropathy at the lumbosacral junction.
>
> Impression:
> Degenerative disc disease at the lower lumbar levels greatest at the lumbosacral junction. Disc herniation and bulge at the L4-L5 and L5-S1 levels respectively causes no significant central canal narrowing. There may be slight contact of the disc bulge with the exiting L5 nerve root on the left neck that cannot be entirely excluded.
>
> Primary Diagnostic Code: ABNORMALITY, ATTENTION NEEDED.

(Tr. at 223, 232, 234, 298.)

On June 13, 2007, Ronald C. Michels, M.D., Staff Physician, Parkersburg VAMC, examined Claimant and reported:

> ASSESSMENT:      1. Chronic low back pain/ct 5/07

      2.  Hyperlipidemia
      3.  Hypertension
      4.  Nicotine Dep [dependence]
      5.  S/P Cholecystectomy

MEDS: Oxycodone 5mg/Acetaminophen 325mg tab take 1 tablet every six hours for pain.  Add Indapamide 2.5mg/d...

Brannon, David Ray is a 58 YO male here in transfer from Wood because he was unhappy w/ Dr. Chua's approach to chronic back pain...

Upper-strength symmetric; Radial pulses normal...Gait, station, coordination are normal.

(Tr. at 347-48.)

On June 21, 2007, Jeffrey K. Riggs, P.A. [Physician's Assistant], Clarksburg VAMC,

reported that he had reviewed the April 23, 2007 MRI report of Dr. Fore.  (Tr. at 232.)  He

stated:

> [P]t [patient] feels that he should be referred for surgery, is tired of taking pain meds...pt options, ie phys [physical] therapy, pain meds, pain clinic surgery advised from look of report doesn't look like surgery would help but will refer for ns opinion, advised pt of need for walking program to help back

> DIAGNOSTIC IMPRESSION: lbp [low back pain] herniated discs poss [possible] L5 nerve root on left side contact

> PLAN/TREATMENT: phys [physical] therapy, home walking program, refer to ns [neurosurgery] pitts [Pittsburgh] for opinion.

(Tr. at 234, 343-44.)

On July 19, 2007, Jenny Nestor, Physical Therapist, Clarksburg VAMC, provided a

physical therapy consultation with Claimant and concluded:

> ASSESSMENT: Patient unable to attend physical therapy on a regular basis due to financial constraints and inability to tolerate riding in a car for 1.5 hrs [hours] one way...
> PLAN: 1x for TENS Unit and home program.
> Potential: Limited-Patient unable to attend on a regular basis.

12

LTG's (Discharge):
1.  Independent with home program.
2.  Educational needs met.
3.  Independent with correct/safe use of TENS Unit and thermophore.

(Tr. at 318-19, 341-42.)

On July 23, 2007, Ms. Nestor, physical therapist, Clarksburg VAMC, reported:

"Treatment today consisted of...moist heat/cold packs...Elect. [electric] Stim

[stimulation]...to lumbar area x 20 min. [minutes] in supine w/ [with] bolster under the

knees...Patient issued a TENS Unit and Thermophore and instructed in the safe/correct use

via demonstration...Tolerated tx [treatment] and PT [physical therapy] activities well." (Tr.

at 340.)

On August 1, 2007, Ms. Nestor, physical therapist, Clarksburg VAMC, reported:

Treatment today consisted of...moist heat/cold packs...Elect. Stim...to lumbar
area x 20 min. in supine w/ bolster under the knees...Tolerated tx and PT
activities well.  Patient indicated driving to Clarksburg from Parkersburg
significantly increases his symptoms.  Patient requested to wait until after his
appointment with the surgeon before he reschedules another PT
appointment.

(Tr. at 339.)

On August 13, 2007, Frank A. Mino, M.D., radiologist, Pittsburgh VAMC, reported

that he had interpreted an x-ray of Claimant's lumbar spine with flexion/extension lateral

views:

Impression:

Partial sacralization of the L5 vertebrae.
Severe facet arthropathy at L4-L5.
Degenerative retrolisthesis of L4 on L5.
Disc space narrowing, vacuum disc, subcortical sclerosis and anterior
osteophytes at L1-L2 through L3-L4 indicate less advanced degenerative disc
disease.
No evidence of fracture, instability or neoplastic disease.

13

(Tr. at 378.)

On August 13, 2007, Pedro J. Aguilar, M.D., Pittsburgh VAMC, examined Claimant during a neurology consultation and reported:

> HISTORY OF PRESENT ILLNESS: This is a consultation on a 58-year-old navy aviation electrician from Parkersburg, West Virginia, who comes in with a greater than 5-year history of lower back pain, worsening over the past 2 or 3 years and becoming intolerable since January.  He works as a heating and air conditioning, maintenance type work, and was involved in a MVA in 1970.
>
> The pain is constant, however, worse with movement, and improves when he finds a supine position.  He denies any frank lower extremity weakness, and any gross paresthesias, with occasional radicular type pain in the left lower extremity down to his foot, is not able to tell exactly where in his foot.  He has not tried a course of anti-inflammatories.  He is currently undergoing physical therapy with very little relief, and has not been referred to a pain clinic yet.
>
> PAST SURGICAL HISTORY: His past surgical history is positive for a cholecystectomy.  He has not had any prior back surgeries in the past.
>
> PAST MEDICAL HISTORY: He has a past medical history significant for hypertension and hypercholesterolemia.
>
> PHYSICAL EXAM: On exam, he is alert, awake, in no apparent distress.  His gross examination of his back showed no prior scars or abnormalities.  He has 4/5 strength in his hip, flexures, leg extension, flexion, dorsiflexion, plantar flexion, and extensor halluces longus, all related to a significant amount of back pain.  He has a negative straight leg raise test.  Hyper extremities are strong.
>
> I reviewed his MRI, which shows desiccated, degenerative disks at L4-L5 and L5-S1.  He has disk bulges at L3-L4 and L4-L5.  I do not see a significant amount of central stenosis, and there is a mild amount of foraminal stenosis, left greater than right, very mild.
>
> Please note there is a grade 1, retrolisthesis of 4 on 5, and please note that the L5 vertebrae appears to be a lumbarized S1; however, I am calling this L5.
>
> ASSESSMENT: A 58-year-old gentleman with degenerative disk disease with

a strong musculoskeletal component to his pain, with a grade 1 retrolisthesis of 4 on 5.

RECOMMENDATIONS: I would recommend the patient continue his physical therapy and be referred to a pain clinic for temporary relief with facet blocks if warranted.  In light of his back pain being greater than 6 months, I do not recommend a back brace at this time.  I recommend the patient undergo also a course of anti-inflammatories with *-* prophylaxes, Motrin preferably.

I have discussed with him the difficulties with surgical treatment and degenerative spine disease, and have told him that if medical treatment has been exhausted, at that point I would recommend a diskogram at all levels of his lumbar spine to see whether or not his pain is reproduced with *-*.  If at that time those studies prove to be positive, and him being currently employed, he would possibly make a good surgical candidate; however, we will see how he does with conservative treatment.  Prior to his return in 3 months, I would also like him to receive flexion/extension films in order to rule out any gross signs of instability.

(Tr. at 314-16, 382-86, 390-92.)

On December 4, 2007, John A. Lucci, M.D., anesthesiologist, Clarksburg VAMC, indicated that Claimant's current primary care physician is Ronald C. Michels, M.D., and that Claimant sought treatment for "interventional pain management [due to] chronic lumbar pain...Mr. Brannon was seen by Dr. Pedro Aguilar in neurosurgery; Dr. Aguilar is recommending that Mr. Brannon have facet blocks for his back pain through the Clarksburg pain clinic."  (Tr. at 305-06.)

On December 13, 2007, Dr. Michels, M.D., Parkersburg VAMC, stated that Claimant had a follow-up visit for hypertension and chronic pain.  (Tr. at 323-24.) He noted that Claimant's "gait, station, coordination are normal." (Tr. at 324.) Dr. Michels further noted:

Alcohol counseling given at this visit...

Patient is a current tobacco user.

1.  Patient was offered medication to assist in quitting.  Tobacco Cessation

Meds offered and patient refused.
2. Patient was offered a referral to VA Stop Smoking clinic/program when screened for tobacco use.

Weight Mgmt-BMI 25-29.9:
Most recent weight: 196 lb...
Most recent height: 70 in...
Calculated BMI:...28.2 BMI classification is OVERWEIGHT.

Patient would benefit from participation in a MOVE/weight management program...Patient is interested in Move! Order placed for Clerk to call the Move team to provide the patient with information on the Move! 23 program.

(Tr. at 325-26.)

On January 10, 2008, Dr. Lucci reported:

SUBJECTIVE: The patient is a 58-year-old white male who was referred to the Pain Clinic by Dr. Michels for chronic low back pain and hip pain. The patient reports he was seen by Neurosurgery who referred him to the Pain Clinic to consider either facet blocks or nerve blocks. The patient reports his pain is 7 out of 10 today. He reports having back pain since 1967. He was hurt lifting and working and bending over a ladder. He pulled his back out and had to require treatment for approximately one week. He had an MRI done in April of last year in lumbosacral spine which showed degenerative disc disease in the lower lumbar levels, disc herniation in bulge at L4-L5 and L5/S1 without significant central canal stenosis and some contact of disc bulge to L5 nerve root on the left. The patient describes his pain as sharp, shooting, burning, aching and throbbing. Also some numbness and tingling in the legs and mild weakness and the pain is constant and increased with lifting, sitting or walking and improved some with Percocet. No bowel or bladder problems. He has had physical therapy, TENS, chiropractor and medications in the past with mild to moderate results.

PAST SURGICAL HISTORY: Significant for gallbladder surgery and teeth extraction.

CURRENT MEDICAL PROBLEMS:
1. Chronic low back pain.
2. Hypercholesterolemia.
3. Osteoarthritis of the shoulders...

PHYSICAL EXAMINATION:

VITAL SIGNS: Pain is 7 out of 10.  Vital signs are stable.

GENERAL: He is alert and oriented times four.  He ambulates without much difficulty.

SPINE: Straight with normal curvatures.  No masses, rashes or lesions on the skin.

EXTREMITIES: Straight leg raise is negative bilaterally.  Knee jerk and ankle jerk are 2+ and symmetric.  Strength and sensation in the lower extremities is intact.  Lumbar musculature without significant spasms.  SIs are nontender bilaterally.  Mild reduction of flexion, extension and rotation of the lumbar spine.

ASSESSMENT:
1. Chronic low back pain secondary to lumbar degenerative disc disease with disc displacement and disc herniation.

PLAN:
1. Do a lumbar ESI [epidural steroid injection] series and also add ibuprofen
       600 mg twice a day p.r.n. to his regimen.
2. Continue his other medicines.
3. We will see him back in the Pain Clinic in approximately three months and
       then go from there.

(Tr. at 307-08, 329-30.)

On April 24, 2008, Dr. Lucci stated that Claimant had returned for a follow-up:

He reports doing moderately well with the injection and would like to repeat that.  He remains active.  Pain is an 8 out of 10 today.

ASSESSMENT:
1. Chronic low back pain secondary to lumbar degenerative disc disease and lumbar facet disease and disc displacement and herniation.

PLAN:
1. Do a repeat lumbar ESI today.
2. Continue his medicine.
3. Return to the Pain Clinic in approximately three months.

(Tr. at 372.)

On June 13, 2008, Dr. Michels stated that Claimant had a follow-up visit for hypertension and chronic pain, including left knee pain. (Tr. at 370.) He noted that Claimant's upper strength was symmetrical, and that his radial pulses, gait, station, and coordination were normal. (Tr. at 371.) He recommended Claimant to follow-up in six months and continue his medications. Id.

On August 26, 2008, Dr. Lucci stated:

This patient returns for follow-up and reports pain as an 8 out of 10, he says he only got several days of relief with the last injection, unlike the first gave several months relief. However the pain may have been exacerbated by mowing his lawn riding lawnmower. No bowel or bladder problems...

Assessment: Chronic low back pain secondary to lumbar degenerative disease in displacement with herniation, and lumbar facet disease.

Plan: Repeat lumbar ESI today his third injection, continue his medicine, return to clinic in about 3 months.

(Tr. at 365.)

On November 20, 2008, Dr. Michels completed a Medical Assessment of Ability to do Work-Related Activities (Physical) form. (Tr. at 394-97.) He marked "Yes" to questions asking if Claimant's lifting/carrying, standing/walking, and sitting were affected by impairment. (Tr. at 394-95.) He stated Claimant can lift and/or carry less than ten pounds (maximum occasionally or frequently); stand/walk for a total of 2 hours in an 8-hour work day, without interruptions for 15 minutes; and sit for six hours in an 8-hour work day, without interruption for one hour. Id. Dr. Michels marked that Claimant can never climb, balance, crouch, kneel, or crawl and can stoop occasionally. (Tr. at 395.) He stated that Claimant has no environmental restrictions caused by the impairment except for "heights" stating that "pain and back instability -> [increase] risk of fall." (Tr. at 395-96.) Dr.

18

Michels wrote nothing in the space following the questions "What are the medical findings that support this assessment?" and "State any other work-related activities which are affected by the impairment, and indicate how the activities are affected.  What are the medical findings that support this assessment?" (Tr. at 396-97.)  He marked that Claimant was "unlimited" in the manipulative functions of handling, fingering, and feeling, but was limited to "occasionally" in his ability to reach in all directions, including overhead, because it "imposes increased stress on lower back."  Id.  He concluded that Claimant had no visual or communicative limitations because he was unlimited in his ability to see, hear, and speak.  (Tr. at 397.)

Analysis

When the ALJ made the finding that Claimant has a severe back impairment, he wrote the following: "The claimant has chronic back pain and occasional radicular-like pain and numbness in his left leg.  The claimant's symptoms significantly limit his ability to perform basic work activities such as standing and walking and lifting and carrying." (Tr. at 16.)  It is puzzling indeed that after finding a significant limitation in standing, the ALJ would find that Claimant could perform full-time work as a dishwasher.

In his decision, the ALJ considered the entire record and made these findings regarding the medical opinions:

> The claimant described constant back pain.  The pain is aggravated by weight-bearing or any type of movement involving the back, such as bending over.  The claimant testified that he has some problems sitting, but that he can sit better than he can stand.  The claimant said that he cannot stand longer than approximately five minutes before he needs to sit or lie down to alleviate back pain.  He cannot walk farther than approximately one and half to two blocks at a time before he has to stop to rest for a few minutes and rest his back.  The claimant testified that lifting and carrying as much as 10 pounds strains his back.  For example, the claimant uses a shopping cart to

19

transport a gallon of milk through the grocery store rather than try to carry it. The claimant described restless sleep due to pain...

Objective medical findings do not support symptoms of the severity alleged. According to the evaluating neurosurgeon at the VA, the MRI shows "a mild amount of foraminal stenosis left greater than right, very mild." The MRI showed disc desiccation and bulging at L4/L5 and L5/S1 with grade I retrolisthesis of L4 on L5. Flexion/ extension x-rays showed no evidence of instability. The neurosurgical consultation concluded that the claimant's symptoms were due to degenerative disc disease, including the retrolisthesis at L4/L5, "with strong musculoskeletal component to his pain." (Exhibit 8F, pp. 19-20; 10F, p. 1).

The level and intensity of treatment do not support symptoms of the severity alleged. At the time of the neurosurgical evaluation, the claimant was undergoing physical therapy with reported little improvement. The potential of physical therapy could not be realized, however, because the claimant was unable to attend to therapy sessions on a regular basis (Exhibit 8F, p. 47). The recommendation of the evaluating neurosurgeon was continued conservative treatment, including injection therapy. The claimant was scheduled for three injections. The claimant reported "several months of relief" following the first injection in December 2007, but only "several days of relief" following the second injection in April 2008. The second injection was not followed, however, by unscheduled medical visits for recurrent pain. At what appears to have been a routine follow-up in the primary care clinic in June 2008, the claimant reported a moderate degree of pain ("5/8"). Meanwhile, the claimant was being maintained on an Oxycodone medication, which he admitted alleviated his pain. (Exhibit 9F, pp. 6, 11, 12). No further treatment notes dating after the third injection in August 2008, which would have elucidated the claimant's ongoing response to treatment, were submitted. A medication list from the VA dated August 2008 indicates that the claimant's pain medication was stepped down to a non-narcotic analgesic (Tramadol) (Exhibit 9F, p. 7). In response to the undersigned's inquiry at the hearing on December 1, 2008, the claimant's representative stated that the claimant had no further evidence to submit.

But at the hearing, the claimant did submit a Medical Source Statement of Ability to Do Work-Related Activities (Physical) completed by Ronald C. Michels, M.D., a staff physician in the Primary Care Clinic at the Parkersburg, West Virginia Veterans Administration Medical Center (VAMC) (Exhibit 11F). VA treatment records show that Dr. Michels has attended the claimant since June 2007. A treating source opinion is generally given greater weight, but the weight to which it is entitled depends on the same factors by which all medical source opinions are judged. To be entitled to controlling weight, a treating source opinion must be well supported by medically acceptable

clinical and laboratory diagnostic techniques and not inconsistent with other substantial evidence in the record. (20 CFR 404.1527 and 416.927 and Social Security Rulings 96-5p). Limitations of the severity alleged are not supported, however, by any medical findings cited in the MSS or by the longitudinal record of follow-up at VA facilities, discussed above.

The undersigned gives significant weight to the concurring opinions of the State agency medical consultants to the effect that the claimant can meet the strength demands of medium level work (Exhibits 2F and 3F)...Their opinions in this case are well supported by medically acceptable clinical and laboratory findings and consistent with the record as a whole. The undersigned finds that the claimant is somewhat more limited in performing postural activities and tolerating some environmental factors than the State agency assessments appreciated. The residual functional capacity defined above accommodates the claimant's subjective complaints, such as sensitivity to vibration and extremes of temperature, to the extent credible and consistent with the medical and other evidence. The medical evidence does not corroborate instability, and the claimant does not allege any side effects of medication, but he is nevertheless, susceptible to intermittent exacerbation of chronic back pain and the need to use narcotic analgesic, and therefore, the claimant should not be working in hazardous conditions or at unprotected heights.

(Tr. at 16-21.)

Although the ALJ wrote that the non-examining consultants' opinions are "well-supported by medically acceptable clinical and laboratory findings and consistent with the record as a whole," the opinions were rendered in February and March of 2007, before Claimant had the April 23, 2007 MRI, was prescribed oxycodone, referred to and underwent physical therapy, had another x-ray, went to Pittsburgh for a neurological consultation, and had several facet blocks administered by Dr. Lucci. The non-examining consultants' opinions were based on medical records which included periods when Claimant was still employed. (Tr. at 210, 218.) The first opinion was rendered without review of a Function Report, in which Claimant stated what he could and could not do.

Every medical opinion received by the ALJ must be considered in accordance with the factors set forth in 20 C.F.R. §§ 404.1527(d) and 416.927(d) (2010). These factors include: (1) length of the treatment relationship and frequency of evaluation, (2) nature and extent of the treatment relationship, (3) supportability, (4) consistency (5) specialization, and (6) various other factors. Additionally, the regulations state that the Commissioner "will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion." Id. §§ 404.1527(d)(2) and 416.927(d)(2).

Under §§ 404.1527(d)(1) and 416.927(d)(1), more weight is given to an examiner than to a non-examiner. Sections 404.1527(d)(2) and 416.927(d)(2) provide that more weight will be given to treating sources than to examining sources (and, of course, than to non-examining sources). Sections 404.1527(d)(2)(i) and 416.927(d)(2)(i) state that the longer a treating source treats a claimant, the more weight the source's opinion will be given. Under §§ 404.1527(d)(2)(ii) and 416.927(d)(2)(ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Sections 404.1527(d)(3), (4) and (5) and 416.927(d)(3), (4), and (5) add the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty).

In evaluating the opinions of treating sources, the Commissioner generally must give more weight to the opinion of a treating physician because the physician is often most able to provide "a detailed, longitudinal picture" of a claimant's alleged disability. See 20 C.F.R.

§ 404.1527(d)(2) and 416.927(d)(2) (2005). Thus, a treating physician's opinion is afforded "controlling weight only if two conditions are met: (1) that it is supported by clinical and laboratory diagnostic techniques and (2) that it is not inconsistent with other substantial evidence." Ward v. Chater, 924 F. Supp. 53, 55 (W.D. Va. 1996).

Under § 404.1527(d)(2)(ii) and 416.927(d)(2) (ii), the more knowledge a treating source has about a claimant's impairment, the more weight will be given to the source's opinion. Section 404.1527(d)(3), (4), (5) and 416.927(d)(3), (4), (5) adds the factors of supportability (the more evidence, especially medical signs and laboratory findings, in support of an opinion, the more weight will be given), consistency (the more consistent an opinion is with the evidence as a whole, the more weight will be given), and specialization (more weight given to an opinion by a specialist about issues in his/her area of specialty).

The Fourth Circuit Court of Appeals has held that "a non-examining physician's opinion cannot by itself, serve as substantial evidence supporting a denial of disability benefits when it is contradicted by all of the other evidence in the record." Martin v. Secretary of Health, Education and Welfare, 492 F.2d 905, 908 (4th Cir. 1974); Hayes v. Gardener, 376 F.2d 517, 520-21 (4th Cir. 1967). Thus, the opinion "of a non-examining physician can be relied upon when it is consistent with the record." Smith v. Schweiker, 795 F.2d 343, 346 (4th Cir. 1986).

The opinion of a treating physician must be weighed against the record as a whole when determining eligibility for benefits. 20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2)(2006). Ultimately, it is the responsibility of the Commissioner, not the court to review the case, make findings of fact, and resolve conflicts of evidence. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). As noted above, however, the court must not abdicate

23

its duty to scrutinize the record as a whole to determine whether the Commissioner's conclusions are rational.  Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1994).

With respect to Claimant's argument that the ALJ gave insufficient weight to Dr. Michels's opinions, the undersigned proposes that the presiding District Judge FIND that the ALJ failed to evaluate Dr. Michels's opinion in keeping with the applicable regulations, case law, and social security ruling ("SSR"), and that the ALJ's findings are not supported by substantial evidence.

The regulations, 20 C.F.R. § 404.1527(d)(2) and 416.927(d)(2), require the ALJ to "give good reasons" for not affording controlling weight to a treating physician's opinion in a disability determination.  The "treating source rule" requires the ALJ to give the opinion of a treating source "controlling weight" if he/she finds the opinion "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record."  20 C.F.R. § 404.1527(d)(2).  If a treating source opinion is not afforded controlling weight because it does not meet these criteria, the ALJ must then determine what, if any, weight to give the opinion by examining several regulatory factors (e.g., length of the treatment relationship).  Id.

Here, the ALJ did not provide particularly "good reasons" for not giving controlling weight to Dr. Michels's statements of Claimant's ability to exert himself.  More importantly, the reasons given by the ALJ for relying on the non-examining consultants are unconvincing given their lack of review of the most recent and compelling evidence.

For the reasons set forth above, it is hereby respectfully **RECOMMENDED** that the presiding District Judge **REVERSE** the final decision of the Commissioner, **REMAND** the case to the Commissioner for further proceedings pursuant to the fourth sentence of 42

U.S.C. § 405(g), and **DISMISS** this matter from the court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Thomas E. Johnston.  Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection.  Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of de novo review by the District Court and a waiver of appellate review by the Circuit Court of Appeals.  Snyder v. Ridenour, 889 F. 2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 (1985); Wright v. Collins, 766 F.2d 841, 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir. 1984).  Copies of such objections shall be served on opposing parties and Judge Johnston.

The Clerk is directed to file this Proposed Findings and Recommendations and to transmit a copy of the same to counsel of record.

February 2, 2012
          Date


Mary E. Stanley
United States Magistrate Judge

25